**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JASON NIEZWICKI,**

**Plaintiff,**

**v.** **Case No. 25-CV-120**

**JUSTIN ZIELINSKI,**

**Defendant.**

---

## DECISION AND ORDER

---

Plaintiff Jason Niezwicki, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Niezwicki was allowed to proceed on a claim under the Fourteenth Amendment because the defendant Justin Zielinski allegedly failed to protect him from another prisoner's attack. The parties filed cross motions for summary judgment, which are fully briefed and ready for a decision. (ECF Nos. 25, 35.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 11.)

## PRELIMINARY MATTER

Zielinski argues that Niezwicki failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to Zielinski's motion for summary judgment, failing to properly support his responses to Zielinski's proposed findings of fact. (ECF No. 41 at 2-4.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

While Niezwicki's responses to Zielinski's proposed findings of fact do not formally conform with the rules, his responses contain facts sufficient to allow the court to rule on Zielinski's summary judgment motion. Niezwicki also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Niezwicki's submissions where appropriate in deciding Zielinski's motion.

## FACTS

At all times relevant Niezwicki was a pretrial detainee at the Milwaukee County Community Reintegration Center (CRC). (ECF No. 27, ¶ 1.) Zielinski was a corrections officer at the CRC. (*Id.*, ¶ 7.) On July 30, 2024, after testing positive for COVID-19, Niezwicki was assigned to dorm E2, which was the COVID-positive dorm. (*Id.*, ¶ 3.) Another prisoner, Monti Webb, was also housed in E2 on July 30, 2024, because he was also COVID-positive. (*Id.*, ¶ 4.)

On July 31, 2024, Zielinski was assigned to work the second shift in dorm E2. (ECF No. 27, ¶ 8.) Around 4:30 p.m., Webb "began making generalized statements demanding to know who took his food bowl." (*Id.*, ¶ 20.) Zielinski states that Webb never directly threatened Niezwicki. (*Id.*) Niezwicki contends that he was directly threatened because Webb was threatening "whoever took his food bowl," which was a "threat to everyone in the dorm, including Mr. Niezwicki." (ECF No. 39, ¶ 20.)

At approximately 6:00 p.m., Niezwicki told Zielinski "that he got one to go". (ECF No. 39, ¶ 22.) Niezwicki states that by telling Zielinski this, he was informing Zielinski that he felt threatened by Webb. (*Id.*) Niezwicki also told Zielinski that "he didn't feel comfortable" and "that he was not cool with generalized threats." (*Id.*, ¶ 23.) Zielinski notes that Niezwicki "did not say who was making threats, who the threats were being made to, or what the specific threats were." (*Id.*) Niezwicki asserts that Webb was threatening everyone in the dorm, including him. (*Id.*, ¶ 24.)

At approximately 8:50 p.m., Webb approached Niezwicki's bunk and asked to see the bottom of his food bowl. (ECF No. 27, ¶ 39.) Niezwicki refused to show Webb the bottom of his food bowl and, according to Niezwicki, at that point Webb "immediately became verbally abusive and threatening." (ECF No. 39, ¶ 41.) Niezwicki then stood up in his bunk, "because of Mr. Webb's threatening manner and he believed he saw a lock in Webb's hand." (*Id.*, ¶ 42.)

Zielinski was standing near the bunks, and once he saw Niezwicki stand up he ordered both Webb and Niezwicki to return to their bunks and remain seated on their beds. (ECF No. 27, ¶ 44.) Neither Webb nor Niezwicki followed Zielinski's order but continued to argue. (ECF No. 39, ¶ 45.) Zielinski states that, during this altercation, Niezwicki did not say he was afraid for his life or safety. (*Id.*, ¶ 46.) Niezwicki does not dispute this but asserts that, at this point, Zelinski should have "called in a disturbance immediately." (*Id.*, ¶¶ 46, 49.) Zielinski again ordered both Webb and Niezwicki to "bunk up" but, again, neither followed his orders. (*Id.*, ¶ 47.) When Niezwicki attempted to walk away, , Webb struck him in the head. (*Id.*, ¶ 45; ECF No. 27, ¶ 51.) Niezwicki then

"tried to grab Mr. Webb to bring him to the ground in an effort of self-defense." (ECF No. 27, ¶ 53.)

Zielinski asserts that he "did not expect a fight to occur; in fact, he was surprised that the two inmates did not follow orders." (ECF No. 27, ¶ 49.) He also asserts that, after Webb and Niezwicki ignored his second order to "bunk up," they "got into a boxer's stance and Mr. Niezwicki dared Mr. Webb to 'do something'". (*Id.*, ¶ 50.) Niezwicki does not dispute this but reiterates that Zielinski should have called in a disturbance. (ECF No. 39, ¶ 50.)

Once Zielinski saw Webb swing at Niezwicki, he used his radio to request additional officers to report to the dorm. (ECF No. 27, ¶ 52.) Zielinski asserts that, according to CRC training, "a single corrections officer should never voluntarily introduce himself or herself into a physical altercation between two or more residents, as it is unsafe to do so." (*Id.*, ¶ 54.) The fight lasted only a few seconds and ended before back-up arrived. (*Id.*, ¶ 56.) Webb and Niezwicki were separated, and Niezwicki was taken to the Health Services Unit. (*Id.*, ¶ 58.) Niezwicki was examined, and it was determined he needed to go to the hospital for a head injury. (*Id.*, ¶ 63.)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See*

*Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**ANALYSIS**

Niezwicki claims that Zielinski violated his Fourteenth Amendment rights when he failed to prevent Webb from attacking him. Under the Fourteenth Amendment, pretrial detainees are entitled to be free from conditions that amount to punishment. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). Claims such as these are governed by an objective reasonableness standard. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (holding that all types of conditions of confinement claims from pretrial

detainees should be examined under the objective reasonable standard outlined in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). For failure-to-protect claims, the Seventh Circuit Court of Appeals recently adopted the standard promulgated by the Ninth Circuit Court of Appeals in *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). *Kemp v. Fulton County*, 27 F.4th 491, 497 (7th Cir. 2022). The standard has four prongs: "(1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; . . ." (3) the officer "did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries." *Id.* (quoting *Castro*, 833 F.3d at 1071).

This standard "does not require a pretrial detainee to prove the defendant's subjective awareness of the risk of harm to establish liability." *Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024). "The detainee must prove only that a reasonable officer under the circumstances would have appreciated the risk of harm to the detainee, and, from there, that the defendant acted in an objectively unreasonable way in addressing that risk." *Id.* A "defendant's knowledge of the *factual circumstances* informs whether a reasonable officer under the same circumstances would have developed subjective or personal awareness of the *risk of harm* to the plaintiff." *Id.* (emphasis in original).

No reasonable factfinder could conclude that Zielinski acted with objective unreasonableness. Webb did not make a threat specific to Niezwicki. While Niezwicki

argues that Webb threatened all prisoners on the housing unit, which would include him, such a general threat would not put a reasonable officer on notice of a substantial risk of harm *to Niezwicki*.

Niezwicki argues that, once he and Webb began verbally arguing, Zielinski should have called in a disturbance, and the fact that he did not violated policy. As to the policy violation, "[s]ection 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). So even if Zelinski did violate policy, that is insufficient to demonstrate a constitutional claim.

It is undisputed that the altercation between Webb and Niezwicki quickly escalated to physical violence. No reasonable officer would have had the opportunity to intervene in that short time frame to prevent the violence. Niezwicki argues that Zielinski should have attempted to physically break up the fight, but the Seventh Circuit has "explained many times over that an officer may call for back-up before breaking up a fight" without violating a detainee's rights. *Davis*, 107 F.4th at 782 (listing cases). Thus, it was not unreasonable for Zielinski to wait for back-up to arrive before physically intervening.

Because no reasonable factfinder could conclude that an officer facing the same circumstances as Zielinski acted unreasonably, summary judgment is granted in Zielinski's favor.

## CONCLUSION

For the foregoing reasons, Zielinski's motion for summary judgment is granted, and Niezwicki's motion for summary judgment is denied. Zielinski also argued that he was entitled to qualified immunity. Because the court finds in his favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Zielinski's motion for summary judgment (ECF No. 25) is **GRANTED.**

**IT IS FURTHER ORDERED** that Niezwicki's motion for summary judgment (ECF No. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil

Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 22nd day of October, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge